UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MILAN HALL,

                Plaintiff,

v.                                                 8:18-CV-1405
                                                 (GTS/CFH)

CLINTON COUNTY,

                Defendant.
_____

APPEARANCES:                              OF COUNSEL:

MILAN HALL
  Plaintiff, *Pro Se*
36 Bell Road
Chazy, NY 12921

MURPHY BURNS LLP                      THOMAS K. MURPHY, ESQ.
  Counsel for Defendant
407 Albany Shaker Road
Loudonville, NY 12211

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this *pro se* civil rights action filed by Milan Hall

("Plaintiff") against Clinton County ("Defendant"), is Defendant's motion to dismiss Plaintiff's

Amended Complaint for failure to state a claim upon which relief can be granted.  (Dkt. No. 13.)

For the reasons set forth below, Defendant's motion is granted.

## I.    RELEVANT BACKGROUND

### A.    Plaintiff's Amended Complaint

Plaintiff filed an Amended Complaint in accordance with this Court's Decision and Order

of August 26, 2019.  (Dkt. No. 11 [Decision and Order filed Aug. 26, 2019].)  Generally, in his

Amended Complaint, Plaintiff alleges that, "commencing on the 28th day of June 2012,"

Defendant has violated his rights in five ways by using his marriage license as proof of paternity:

(1) Defendant has stripped him of his status as a man and termed him a non-custodial parent and

obligor; (2) Defendant has wrongfully denied him the right to raise his child as he pleases and to

do so in privacy; (3) Defendant has damaged his reputation in his community; (4) Defendant has

denied him the right to a trial by jury before ordering him to pay child support; and (5) Defendant

denied him his right to due process when it failed to disclose to him the legal consequences that

would result from the signing of his marriage license. (Dkt. No. 12 [Pl.'s Am. Compl.].)

Generally, based on these factual allegations, and construed with special liberality, Plaintiff's

Amended Complaint claims that Defendant violated his rights to due process under the Fifth and

Fourteenth Amendments, and his right to a jury trial under the Sixth and/or Seventh

Amendments to the United States Constitution and 42 U.S.C. § 1983.  (*Id.*)

    **B.**    **Parties' Briefing on Defendant's Motion to Dismiss**

        **1.**    **Defendant's Memorandum of Law**

       Generally, in its motion to dismiss Plaintiff's Amended Complaint, Defendant makes two

arguments.  (Dkt. No. 13, Attach. 2 [Def.'s Mem. of Law].)  First, Defendant argues that

Plaintiff's Amended Complaint fails to state a claim upon which relief can be granted.  (*Id.* at 7-

8.)  More specifically, Defendant argues that Plaintiff has not pled facts plausibly suggesting the

existence of any municipal custom, policy, or practice that caused his alleged constitutional

deprivations, but rather has merely alleged that New York's valid paternity laws are not fair.

(*Id.*)  Defendant also argues that Plaintiff is essentially seeking a nullification of a New York

State Family Court Order of Child Support against him, triggering the domestic relations exception to federal court jurisdiction, and thus, even if the Court were to find that Plaintiff has stated a claim, the Court would not possess subject-matter jurisdiction over any such claim.  (*Id.*)

Second, Defendant argues that, based on the Amended Complaint's own factual allegations, Plaintiff's claims are untimely as a matter of law.  (*Id.* at 8-9.)  More specifically, Defendant argues that the statute of limitations for personal injury actions in New York is three years from when the plaintiff knew or had reason to know of the injury, and that the Amended Complaint expressly alleges that the child support proceedings were initiated on June 28, 2012; yet Plaintiff did not file this lawsuit until December 2018.  (*Id.*)  Defendant argues that any allegations that the injury is ongoing (because Plaintiff is under a continuous obligation to pay child support) would not render his claim timely under the continuing violation doctrine because, based on the factual allegations of the Amended Complaint, he was (or reasonably should have been) aware of that injury as early as June 28, 2012.  (*Id.*)

## 2.     Plaintiff's Opposition Memorandum of Law

Generally, in opposition to Defendant's motion, Plaintiff makes four arguments.  (Dkt. No. 15, at 4-5 [Pl.'s Opp'n Mem. of Law].)  First, Plaintiff argues that he is not alleging that Defendant failed to inform him of the responsibilities that could possibly result from children born during his marriage at the time he signed the marriage license, but that "Defendants failed to employ Due Process Safeguards to ensure that the rights of the Plaintiff were protected, and as a result the Plaintiff was defaulted into a Title IV-D case from which he now suffers the deprivation of his inherent rights"; however, he concedes that "[t]his deprivation is extrinsically linked to the Defendants failure to employ due process safeguards when presenting the Plaintiff

with a marriage certificate, the legal instrument that would later be used to default the Plaintiff

into a Title IV-D case." (*Id.* at 4.)  Pointing to a federal statute requiring a state to have a civil

process for voluntarily acknowledging paternity that includes the provision of due process and an

explanation by the state of the individual's rights and responsibilities of acknowledging paternity,

he appears to argue that Defendant violated his right to due process by summoning him to a "fact

finding" hearing before a "Family Court Support Magistrate" because the Federal Manual of

Child Support requires that such a proceeding should not have been presided over by "a judge of

the court." (*Id.*)

Second, Plaintiff argues that he is not merely asking the Court to overturn the child

support order as Defendant suggests, but is seeking a remedy for the violation of his

constitutional rights.  (*Id.* at 4-5.)

Third, Plaintiff argues that it is a crime to deprive an individual of his or her

constitutional rights.  (*Id.* at 5.)

Fourth, Plaintiff argues that his claims should not be found to be untimely because he

promptly filed his original Complaint in 2018 as soon as he discovered that his rights had been

violated.  (*Id.* at 5.)

## II.   GOVERNING LEGAL STANDARDS

It has long been understood that a dismissal for failure to state a claim upon which relief

can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds:

(1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a

challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.*, 549 F. Supp.2d

204, 211 nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J.) (adopting Report-Recommendation on *de*

*novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding that ground is appropriate.  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) [emphasis added].  In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal."  *Jackson*, 549 F. Supp. 2d at 212 n.20 (citing Supreme Court case).  On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests."  *Jackson*, 549 F. Supp. 2d at 212 n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court.  *Jackson*, 549 F. Supp. 2d at 212 n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases).  For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits."  2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003).  For example, numerous Supreme Court and Second Circuit decisions exist holding

that a pleading has failed to meet the "liberal" notice pleading standard.  *Rusyniak,* 629 F. Supp.

2d at 213 n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129

S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate

decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1.

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  In doing so, the Court "retire[d]" the

famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint

should not be dismissed for failure to state a claim unless it appears beyond doubt that the

plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

*Twombly*, 127 S. Ct. at 560-61, 577.  Rather than turn on the *conceivability* of an actionable

claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable

claim.  *Id*. at 555-70.  The Court explained that, while this does not mean that a pleading need

"set out in detail the facts upon which [the claim is based]," it does mean that the pleading must

contain at least "some factual allegation[s]."  *Id*. at 555.  More specifically, the "[f]actual

allegations must be enough to raise a right to relief above the speculative level [to a plausible

level]," assuming (of course) that all the allegations in the complaint are true.  *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*,

129 S. Ct. 1937, 1949 (2009).  "[D]etermining whether a complaint states a plausible claim for

relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense. . . .  [W]here the well-pleaded facts do not permit the court to

infer more than the mere possibility of misconduct, the complaint has alleged–but it has not

show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (internal quotation marks

and citations omitted).  However, while the plausibility standard "asks for more than a sheer

possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability

requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to

relief, "the tenet that a court must accept as true all of the allegations contained in the complaint

is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action,

supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.  Similarly,

a pleading that only "tenders naked assertions devoid of further factual enhancement" will not

suffice. *Iqbal*, 129 S. Ct. at 1949  (internal citations and alterations omitted).  Rule 8 "demands

more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations

omitted).

Finally, a few words are appropriate regarding what documents are considered when a

dismissal for failure to state a claim is contemplated.  Generally, when contemplating a dismissal

pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the

four corners of the complaint may be considered without triggering the standard governing a

motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer,

(2) documents incorporated by reference in the complaint (and provided by the parties), (3)

documents that, although not incorporated by reference, are "integral" to the complaint, or (4)

any matter of which the court can take judicial notice for the factual background of the case.[1]

## III.   ANALYSIS

After carefully considering whether Plaintiff's Amended Complaint should be dismissed,

the Court answers this question in the affirmative for the reasons stated in Defendant's

memorandum of law.  (Dkt. No. 13, Attach. 2, at 7-9 [Def.'s Mem. of Law].)  To those reasons,

the Court adds the following analysis.

As an initial matter, the Court finds that Plaintiff's claims, to the extent that they seek an

invalidation of a Family Court child support order, are barred by the *Rooker-Feldman* doctrine.

---

[1]        *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit
to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-
573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion
to dismiss for failure to state a claim to a motion for summary judgment is not necessary under
Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached
to the complaint or answer, [2] documents incorporated by reference in the complaint (and
provided by the parties), [3] documents that, although not incorporated by reference, are
"integral" to the complaint, or [4] any matter of which the court can take judicial notice for the
factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir.
2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6)
"may consider the facts alleged in the complaint, documents attached to the complaint as
exhibits, and documents incorporated by reference in the complaint. . . .  Where a document is
not incorporated by reference, the court may neverless consider it where the complaint relies
heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . .
However, even if a document is 'integral' to the complaint, it must be clear on the record that no
dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that
there exist no material disputed issues of fact regarding the relevance of the document.") [internal
quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d
Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an
exhibit or any statements or documents incorporated in it by reference.") (internal quotation
marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72
(2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or
incorporate by reference a [document] upon which it solely relies and which is integral to the
complaint," the court may nevertheless take the document into consideration in deciding [a]
defendant's motion to dismiss, without converting the proceeding to one for summary
judgment.") (internal quotation marks and citation omitted).

Under the *Rooker-Feldman* doctrine, a federal court lacks subject-matter jurisdiction where the following four elements are met: (1) the plaintiff has lost in state court; (2) the plaintiff complains of injuries caused by the state court judgment; (3) the plaintiff invites the district court to review and reject the state court judgment; and (4) the state court judgment was rendered before the district court proceedings commenced. *Ganiyu v. Lopez*, 19-CV-11605, 2020 WL 1467356, at *2 (S.D.N.Y. Mar. 25, 2020) (citing *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 [2d Cir. 2005]). It is evident from the Amended Complaint that Plaintiff received a child support order against him, that he now complains that the proceedings that resulted in that order caused his alleged constitutional injuries, and that the child support order was rendered before he commenced this action. Additionally, although Plaintiff frames his argument in terms of constitutional violations and inadequacies in the proceedings underlying the support order, such arguments amount to little more than a request for this Court to assess whether the Family Court's reliance on the marriage license to establish paternity was correct, something which this Court is not permitted to do. *See Kramer v. Dane*, 17-CV-5253, 2018 WL 4489284, at *3 (E.D.N.Y. Sept. 19, 2018) ("[T]he fact that plaintiffs assert that their constitutional rights were violated during the state court proceedings does not except their claims from the *Rooker-Feldman* doctrine."); *Davis v. Westchester Cnty. Family Court*, 16-CV-9487, 2017 WL 4311039, at *8 (S.D.N.Y. Sept. 26, 2017) (finding "[t]he fact that Plaintiff is challenging the constitutional adequacy of the proceedings is of no help to him" in precluding application of the *Rooker-Feldman* doctrine to his claims) (collecting cases).[2]

---

[2]     The Court notes that, although Defendant argues that subject-matter jurisdiction is lacking over Plaintiff's claims based on the domestic relations exception, the Second Circuit recently held that the domestic relations exception does not apply in federal-question cases.

To the extent that Plaintiff seeks entitlement to relief beyond a nullification of the child

support order that would be excepted from jurisdiction by the *Rooker-Feldman* doctrine, the

Court also finds that Plaintiff's claims pursuant to 42 U.S.C. § 1983 fail under Fed. R. Civ. P.

12(b)(6) as time-barred.  Plaintiff attached to the Amended Complaint a copy of the Family

Court's summons to a fact-finding hearing to be held on July 30, 2012, before Support

Magistrate Michael J. Howley, and a copy of the Petition for Child Support filed against Plaintiff

that was the basis for that hearing.  (Dkt. No. 12, Attach. 1.)  The Amended Complaint alleges

that it was the commencement of the proceedings against Plaintiff through this petition in June

2012 that caused the deprivation of his rights.  (Dkt. No. 12, at 5 [Pl.'s Am. Compl.].)  The

Supreme Court has held that, "[b]ecause § 1983 claims are best characterized as personal injury

actions . . . a State's personal injury statute of limitations should be applied in all § 1983 claims."

*Owens v. Okure*, 488 U.S. 235, 240-41 (1989).  The Supreme Court found in particular that New

York's general or residual statute related to personal injury actions should be applied, which sets

a three-year statute of limitations.  *Owens*, 488 U.S. at 249-50; *accord, Phillips v. City of New*

*York*, 304 F. Supp. 3d 305, 311 (E.D.N.Y. 2018).  Such statue of limitations begins "when a

plaintiff has a complete and present cause of action, that is when the plaintiff can file suit and

obtain relief," or, in other words, "when the wrongful act or omission results in damages, . . . and

---

*Deem v. DiMell-Deem*, 941 F.3d 618, 621 (2d Cir. 2019).  Although the Second Circuit also
found that, notwithstanding the inapplicability of the domestic relations exception, the separate
domestic relations abstention doctrine does apply to federal-question cases, the Court need not
determine whether abstention would be appropriate in this case based on its finding that the
*Rooker-Feldman* doctrine divests the Court of subject-matter jurisdiction over any claims that
would be covered by that abstention.  Finally, the Court notes that it may *sua sponte* consider the
*Rooker-Feldman* doctrine (even though Defendant never invoked it) because pursuant to Fed. R.
Civ. P. 12(h)(3), the Court may *sua sponte* consider whether it lacks subject-matter jurisdiction
over a claim.

once the plaintiff knows or has reason to know of the injury which is the basis of his action."
*McDonough v. Smith*, 898 F.3d 259, 265 (2d Cir. 2018) rev'd on other grounds *McDonough v.*
*Smith*, 139 S.Ct. 2149 (2019).

In this case, Plaintiff acknowledges in his Amended Complaint that his alleged
constitutional harms occurred as a result of the child support proceedings against him in late June
2012.  (Dkt. No. 12, at 5 [Pl.'s Am. Compl.].)  It is therefore reasonable to find that Plaintiff
knew or should have known of the proceedings against him and the child support order at the
time those events occurred in 2012.  Of note, Plaintiff does not allege that he was never informed
of either the proceedings against him or of the child support order itself until a later time.
Nonetheless, Plaintiff did not file his initial Complaint in this action until December 3, 2018,
more than six years later.  (Dkt. No. 1 [Pl.'s Compl.].)  Although Plaintiff argues in his
opposition memorandum of law that he "promptly filed a complaint with the Federal District
Court as soon as he discovered his rights had indeed been violated," he offers no explanation in
either the Amended Complaint or his opposition memorandum of law as to why he seemingly did
not know of the alleged constitutional violations until 2018.  (Dkt. No. 15, at 5 [Pl.'s Opp'n
Mem. of Law].)  Additionally, it does not matter when Plaintiff actually discovered a violation.
The relevant consideration is when he knew *or had reason to know* of the alleged injury, and
without any factual allegation that Plaintiff was somehow left in the dark for six years about the
basis for the child support proceedings and order against him (despite the factual statement in the
order that the proceeding against Plaintiff was authorized because he and the child's mother had
gotten married on July 24, 2010), the Court cannot find that he has alleged facts plausibly
suggesting that he did not have reason to know of the alleged injury as long ago as June of 2012.

As a result, the Court finds that Plaintiff's claims are barred by the statute of limitations.

The Court also finds that tolling is not warranted under the circumstances alleged. Although the Second Circuit recognizes the continuing violation doctrine, it has qualified that the doctrine applies only to claims "composed of a series of separate acts that collectively constitute one unlawful practice," or "claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment." *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015). Although Plaintiff alleges that the violations of his rights "continue to this day" because he is still subject to the child support order, the fact that he continues to suffer an ongoing injury does not bring his claim under the auspices of the continuing violation doctrine. In other words, each payment Plaintiff is required to make under the child support order is not a new and separate act and injury, but merely a consequence of the initial act, namely, the proceedings and the issuance of the child support order in 2012. Plaintiff had a fully formed claim upon the occurrence of the relevant proceedings and the issuance of the child support order. The Court therefore declines to find that the continuing violation doctrine applies to Plaintiff's claims, and finds instead that there is no other apparent basis for tolling the statute of limitations. Plaintiff's claims pursuant to 42 U.S.C. § 1983 are therefore time-barred and must be dismissed.

In the alternative to the finding that Plaintiff's claims are time-barred and/or covered by the *Rooker-Feldman* doctrine, the Court finds that he has not alleged facts plausibly stating any claim upon which relief can be granted. As an initial matter, Defendant is correct that Plaintiff has again failed to allege any facts plausibly suggesting a municipal custom, policy, or practice to merit holding Defendant liable for the alleged constitutional violations. The only apparent policy

identified by Plaintiff is the policy of allowing use of a marriage license to create a presumption

of paternity.  (Dkt. No. 12, at 5 [Pl.'s Am. Compl.].)  However, as Defendant argues, this

"policy" is in fact a long-standing part of New York common law, not merely a practice or rule

put in place by Defendant or the Clinton County Family Court.  *See In re Findlay*, 253 N.Y. 1, 6-

7 (N.Y. 1930) (discussing the presumption of legitimacy).  Notably, Plaintiff has not alleged facts

plausibly suggesting that Defendant had a policy of disallowing rebuttal of the presumption of

legitimacy or any other action of that nature that would have prevented Plaintiff from providing

evidence to rebut that presumption.  As a result, Plaintiff has not alleged facts plausibly

suggesting that the alleged constitutional violations were a result of any policy imposed by

Defendant, and the Court therefore finds that Defendant cannot be held liable for the claims

asserted against it.

Even if Plaintiff had alleged facts plausibly suggesting the existence of a municipal

custom, policy, or practice, the Court finds that Plaintiff has not stated a claim upon which relief

can be granted.  Many of the claims asserted by Plaintiff (i.e., that Defendant has stripped him of

his status as a man, violated his right to privacy, violated his right to raise his child as he pleases,

violated his right to trial by jury, and defamed him) are either not facially viable legal claims

under the circumstances or are so vaguely asserted (i.e., without sufficient supporting factual

allegations) that they cannot be found to plausibly state a claim upon which relief can be granted.

The Court therefore finds little need to discuss these claims in any detail, but finds that they must

be dismissed.

With regard to Plaintiff's due process claim, and particularly Plaintiff's argument that

Defendant's acceptance of the marriage license as proof of paternity was a violation of his right

13

to due process, as the Court has previously found, Plaintiff has not alleged facts plausibly suggesting that he was denied the opportunity to present counter-evidence to overcome the presumption that a child born in the context of a marriage is the child of the married spouses. Rather, the summons attached to the Amended Complaint notified him of a fact-finding hearing that preceded the issuance of the child support order.  Plaintiff has not alleged facts plausibly suggesting that he did not receive sufficient notice of the commencement of the proceedings before the child support order was enacted against him (or that he even attended the hearing). Moreover, the summons specifically states that "failure to appear will result in the entry of an order on default unless service has been made by mail alone, in which event no default may be entered without proof satisfactory to the court that you have received actual notice of the commencement of this proceeding."  (Dkt. No. 12, Attach. 1, at 1.)  Without any factual allegation plausibly suggesting that Plaintiff (a) lacked notice of the hearing such that a default was improper, or (b) attended the hearing but was denied the opportunity to provide evidence to counter the presumption created by the marriage license, the Court cannot find that he has alleged facts plausibly suggesting that Defendant violated his due process rights in relying on the marriage license when issuing the child support order.

Plaintiff also argues that his due process rights were violated by the fact that a Support Magistrate of the Family Court granted the petition for child support because the Federal Manual of Child Support requires that "[p]roceedings conducted pursuant to either the expedited judicial or expedited administrative process must be presided over an individual who is not a judge of the court."  (Dkt. No. 15, at 4 [Pl.'s Opp'n Mem. of Law].)  However, even if Plaintiff has alleged facts plausibly suggesting that Defendant violated this provision of the Federal Manual of Child

Support (a finding that the Court does not make), he has made no factual allegation plausibly suggesting how any such violation in turn violated his due process rights under the United States Constitution.[3]

Having already afforded Plaintiff an opportunity to amend his Complaint, the Court finds that it need not grant Plaintiff an opportunity to amend the Amended Complaint to attempt to cure any of the above-mentioned deficiencies, In any event, it finds those deficiencies to be substantive in nature, due to the findings that the Court lacks subject-matter jurisdiction to consider any claims that fall under the *Rooker-Feldman* doctrine, and that any other potential claims are untimely (and Plaintiff has not offered any indication that he could allege facts to plausibly suggest that those claims were in fact timely).

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 13) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Plaintiff's Amended Complaint (Dkt. No. 12) is **DISMISSED**.

Dated: April 21, 2020
     Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge

---

[3] Of note, the New York Family Court Act indicates that support magistrates are in fact not "a judge of the court" as Plaintiff appears to assert. *See* N.Y. Fam. Ct. § 439(a) (indicating that, although support magistrates are appointed to have authority over certain matters related to support proceedings, their findings in many cases are limited or overseen by "a judge of the court"). Given that Plaintiff himself acknowledges that the decision-maker on the support petition was a "Family Court Support Magistrate" (an acknowledgment that is confirmed by the attachment to the Amended Complaint), the Court finds that Plaintiff has not alleged facts plausibly suggesting that the use of a support magistrate was in anyway contrary to federal law or policy.

15